## 30831. DAVIS *v.* WING.

.DECIDED APRIL 16, 1945.

*Scott, Dunaway, Riley & Wiggins,* for plaintiff in error.
*Powell, Goldstein, Frazer & Murphy, James K. Rankin,* contra.

FELTON, J. Mrs. E. Bristow Bryan Wing sued Frank E. Davis to recover renewal commissions alleged to be due her for the months of September, October, November, and December, 1943, and January, 1944, under five written contracts between her and Davis. The contracts were identical except as to the names of the insured. The jury found for the plaintiff the amounts sued for. The defendant excepts to the overruling of his motion for a new trial as amended.

The contracts contain the following material provisions: "1. The party of the first part hereby agrees during the continuance of this contract to pay the party of the second part commission in accordance with the [following] table . . table of commission

rates: First year commission—9½%. Renewal commission—2%. 2. The first year commission rate shall be payable on all premiums for insurance covering the period from the date of this agreement to October 16, 1940, inclusive; the renewal commission rate shall be payable on all commissions for insurance after October 16, 1940. 3. Commissions shall be payable at the time the respective premiums are paid to the above Washington National Insurance Company of Chicago, Illinois. 4. The party of the first part agrees to continue payment of commissions as provided herein so long as party of the second part exerts his influence to keep the business written hereunder in force and services the same. 5. In the event of the death of the party of the second part while the group hospital policy herein described is still being serviced by the party of the second part as outlined in the paragraph immediately preceding, then the party of the first part agrees to pay the estate of the party of the second part commission as specified herein. 6. The above table of commission rates is to be the total commission paid to the party of the second part, and if it is found necessary by either the party of the second part or the party of the first part to employ the service of assistants, subagents, or others in properly servicing the business in force, and servicing the policyholders, it shall be paid out of the commissions otherwise payable to the party of the first part and out of the commissions otherwise payable to the party of the second part in a proportion equal to each party's respective commissions out of the total commissions payable by the Washington National Insurance Company of Chicago, Illinois, for this group hospital policy." Before going into a discussion of the evidence it will clarify the issues and facilitate a conclusion first to construe the contracts sued on. Construing the various provisions of the instruments together, they provide that the renewal commissions shall be paid to the party of the second part so long as she exerted her influence to keep the business in force and serviced the same, and in the event the party of the second part died while the group policy was in force and was still being serviced by her the renewal commission was to be paid to her estate. Whatever provision number 6 may mean, or however it could be made to operate, it throws no light on the meaning of the other provisions, because it simply provides how the extra services are to be paid for and does not contemplate a

refusal of the parties to perform their duties under the contract. Thus construed the contract is clear and unambiguous with the exception of the meaning of the term "servicing" the insurance written.

■ The only question on the general grounds is whether Mrs. Wing "serviced" the insurance business involved in the contracts sued on. At the time of the filing of the action and at the time of the trial, the business was still in force and there was no evidence that Mrs. Wing was not using her influence to keep it so, or that she had tried to get it for another company. Before coming to the evidence as to what "servicing" the business means, it should be stated that Mrs. Wing and her husband had solicited the insurance involved in the five contracts, each involving a different insured, and had turned it over to and had it written by the Washington National Insurance Company, of which the defendant, Frank E. Davis, was general agent, and that Mrs. Wing and Mr. Wing had identical separate contracts with the defendant involving the same insurance with the same insureds. Davis had had no experience in group-hospitalization insurance, the kind written by Mr. and Mrs. Wing, who were experienced in that line of work. The group-hospitalization policies were written on the payroll-deduction plan except for the A. B. & C. Railroad Co. policy. A master policy was issued to the employer and certificates of insurance were issued to the insured's employees. The employer collected the premiums by deducting them from the employee's pay and remitted monthly premiums to the home office of the insurance company. When the insurance was written Mr. and Mrs. Wing set up a method of servicing and handling the business. They trained a personnel man at each insured's location who handled and paid claims directly without the aid of Davis or the Wings except that occasionally the personnel man would call one of them for suggestions or advice, but it was no more than that because such advice or suggestions did not have to be followed. Personnel men would also call for assistance when some of the employees left their employment and others took their places in order to induce the new employees to take the insurance. Adjustment in insurance rates were handled by the home office. In November, 1942, Mr. and Mrs. Wing went to Jacksonville, Florida. It is immaterial why they went. Mr. Davis knew that they were

going, did not call on them for any service while they were away, and paid them their commissions for the time they were in Florida. Mr. and Mrs. Wing returned to Atlanta in July, 1943. Mr. Davis paid them in August, 1943, the commissions on premiums collected for the month of July, 1943, in September for August premiums, and again in October for additional premiums collected during August or previous months. Mr. Davis testified in substance that servicing meant answering the calls of the personnel men concerning claims and the soliciting of new employees to take the insurance. The import of the evidence on behalf of Mrs. Wing as to the meaning of the term was, that it meant using her influence to keep the business on the books. Mr. Friedner, a representative of the insurance company, testified that "servicing," as the term was used in the contracts, meant that the agent must perform any duties that the home office called on him to perform. The evidence shows without dispute that neither the home office nor Mr. Davis ever called on Mr. and Mrs. Wing to do anything which they refused to do. After the Wings returned to Atlanta Mr. Davis never called on them for any service and never referred a call to them. On June 15, 1943, Davis wrote the Wings summarily terminating the contracts. On the same day he wrote Mr. Wing that he was sending the notice of termination because of the insistence of Mr. Friedner, the home-office representative. When the Wings returned to Atlanta Mr. Davis invited them to lunch and paid them the commission on premiums collected for July and later for August. So far as services for the time Mrs. Wing was in Florida were concerned, Davis waived any failure to perform them by paying for them. Davis's sole defense is, that after the Wings returned from Florida they did not manifest any interest in servicing the business. He testified that he talked with the Wings about all kinds of insurance generally and they did not give him any impression that they were interested in his business at all. And yet he did not refer any calls to them, did not request any service, and expressed no dissatisfaction with the way in which they were handling the business. Furthermore, the evidence does not show that there was anything in the way of servicing, which they knew about, which they did not do, or were unwilling to do, after they came back from Florida. As was stated in the beginning, Mr. and Mrs. Wing had identical contracts. At

the time the contracts were made, Mr. and Mrs. Wing were not married. It was very improbable that both would fully service each contract. In view of all the circumstances of the case it would seem that it was incumbent upon the defendant to supervise the carrying out of the contract as between him and the Wings and give directions when necessary as to what should be done. It certainly does not comport with justice and enlightened conscience to discharge one in the nature of a servant for unsatisfactory service when there is no better evidence of unsatisfactory service than appears in this case, especially without any expression of dissatisfaction or opportunity given to improve it. Under the facts of this case the evidence demanded a verdict for the plaintiff on all five counts.

■ The exception to the exclusion of certain testimony of the defendant is without merit for the reason that the ruling was harmless inasmuch as the defendant testified to the same matter at another time without objection. The testimony desired by the defendant was before the court and jury and it was not harmful to him not to be permitted to give it twice.

■ If there were any errors in the charge, or failure of the trial judge to exercise a discretion in ruling on the motion for a new trial, they were harmless.

The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Sutton, P. J. and Parker, J., concur.*